IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELEANOR COLMERS COWAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-26-2823 |
| SUPERGOOP, LLC, | * | |
| Defendant. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff Eleanor Colmers Cowan's Motion to Remand (ECF No. 5). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion.

## I. BACKGROUND

In this putative class action, Cowan alleges that Defendant Supergoop, LLC ("Supergoop") has repeatedly sent her and other Maryland residents false and misleading promotional emails, in violation of Maryland's Commercial Electronic Mail Act ("MCEMA"), Md. Code Ann., Com. Law §§ 14-3002, et seq. (Compl. ¶¶ 1, 5–7, 48, ECF No. 3). This action is the latest in a series of substantively identical cases that have come before this Court. See, e.g., Cowan v. Williams-Sonoma Stores, Inc., No. RDB-26-3073, 2026 WL 2945164 (D.Md. Oct. 1, 2026); LaTouche v. True Religion Apparel, Inc., No. RDB-26-914, 2026 WL 2221402 (D.Md. Aug. 3, 2026); Smith v. Lane Bryant Brands Opco LLC, No. SAG-25-3766, 2026 WL 1745684 (D.Md. June

17, 2026); Mulanena v. Ulta Salon, Cosms. & Fragrance, Inc., No. JRR-25-3753, 2026 WL 1214932 (D.Md. May 4, 2026).

## A. Factual Background[1]

Like the cases cited above, Cowan's claim revolves around promotional emails with subject lines that allegedly "create false urgency by telling recipients that promotions were ending, expiring, in their final hours, or available only for a limited period, and then extending or continuing the same or materially similar promotions after the stated deadline." (Compl. ¶ 34). Cowan includes a table of "representative examples," (id. at 5–6),[2] of the challenged email marketing, including an email sent on August 27, 2024, with the subject line, "Ends Tomorrow: 20% off sitewide" and "Ends Tomorrow: 20% off EVERYTHING," followed by an email sent on August 28, 2024, with the subject line, "Surprise! 20% off EXTENDED through Labor Day." (Id. ¶ 33). The table includes similar examples from September 2024, December 2025, and May 2026. (Id. at 5–6).

Cowan alleges that these email subjects violate MCEMA because their statements that sales or discounts were ending "or otherwise time-limited when the same or materially similar offers were later extended," (id. ¶ 63), constituted "false or misleading information . . . that had the capacity, tendency, or effect of deceiving recipients," as prohibited by MCEMA, (id. ¶ 62); see Md. Code Ann., Com. Law § 14-3002(b)(2)(iii) (prohibiting emails to Marylanders that contain "false or misleading

---

[1] Unless otherwise noted, the Court takes the following facts from Cowan's Complaint (ECF No. 3) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

information in the subject line that has the capacity, tendency, or effect of deceiving the recipient.”).

Notably, Cowan “has not placed an online order” with Supergoop, (Compl. ¶ 10), nor does she allege that the emails were unwanted, caused her to waste time, or took up her email storage. (See generally id.). She also does not allege that the emails did in fact deceive or mislead her. (See generally id.). While the Complaint does state that this type of promotional email “wastes consumers’ time by enticing them to open and engage with Defendant’s marketing” and “floods consumers’ inboxes with repeated false notifications that the time to act is short,” (id. ¶ 36), Cowan does not allege that she herself engaged with the marketing or experienced a flooded inbox, (see generally id.).

Cowan and the putative class members seek statutory damages of $500 per violative email, or actual damages if greater. (Id. at 12).

**B. Procedural History**

Cowan filed a Complaint on behalf of herself and similarly situated Maryland recipients of Supergoop’s emails in the Circuit Court for Baltimore City, Maryland, on June 17, 2026, alleging a single count: violation of MCEMA. (ECF No. 3). Supergoop removed the case to this Court on July 17, 2026. (ECF No. 1). Cowan moved to remand based on a lack of standing on July 21, 2021. (ECF No. 5). Supergoop filed a Response in Opposition to Cowan’s Motion to Remand on August 11, 2026, (ECF No. 9), and Cowan replied on September 1, 2026, (ECF No. 11).

## II. DISCUSSION

### A. Standard of Review

A defendant may remove a state civil action to federal court if the plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a). A defendant that has removed a case carries the burden of establishing federal jurisdiction. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). The Court must strictly construe removal jurisdiction because it raises significant federalism concerns. Id. (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). Congress has expressed a "clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." Medish v. Johns Hopkins Health Sys. Corp., 272 F.Supp.3d 719, 722 (D.Md. 2017) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). Accordingly, if federal jurisdiction is doubtful, the Court should grant a motion to remand. Mulcahey, 29 F.3d at 151.

### B. Analysis

Under Article III of the Constitution of the United States, federal courts may hear only "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; Murthy v. Missouri, 603 U.S. 43, 56 (2024). "The requirement that a [p]laintiff possess 'standing to sue' emanates from that constitutional provision." Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 619 n.5 (4th Cir. 2018). Accordingly, "[w]here standing is in question, the federal court must decide the issue before reaching the merits of any claim presented." Pub. Int. Legal Found., Inc. v. Wooten, 164 F.4th 362, 365 (4th Cir.

2026) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). If there is no standing, a federal court has no jurisdiction and therefore cannot adjudicate the claim. Id. The United States Supreme Court has held that Article III standing exists when a plaintiff (1) "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "the injury was likely caused by the defendant"; and (3) "the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

Here, the issue is whether Cowan alleges an injury-in-fact that is sufficiently concrete.[3] (See Mot. Remand at 1, 3–8, ECF No. 5 (arguing that "this Court lacks subject-matter jurisdiction" only "because the Complaint does not allege that [Cowan] suffered a concrete injury"); Def.'s Opp'n Pl.'s Mot. Remand ["Opp'n"] at 3–15, ECF No. 9 (discussing standing only in relation to concrete injury)). "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016); accord Garey v. James S. Farrin, P.C., 35 F.4th 917, 921 (4th Cir. 2022) ("[P]laintiffs cannot establish a cognizable injury simply by pleading a statutory violation."). When a plaintiff brings a claim "under a statutory cause of action[, they] can establish a cognizable injury by 'identif[ying] a close historical or common-law analogue for their asserted injury' for which courts have 'traditionally' provided a remedy." Id. (quoting TransUnion, 594 U.S. at 424).

[3] As explained below, because the Court lacks jurisdiction, it declines to consider Supergoop's remaining arguments that Cowan's "[a]llegations [c]oncerning the 'capacity' or 'tendency' of deception are preempted" and that Cowan's claims do not meet the minimum $5 million amount in controversy required under the Class Action Fairness Act. (Opp'n at 15, 18–20); see also 28 U.S.C. §§ 1332(d)(2), 1332(d)(6).

Cowan argues that this Court must remand because she has not pleaded an injury that satisfies the requirements of Article III standing. (Mot. Remand at 3–8). Supergoop argues that Cowan has, in fact, pleaded such an injury. (Opp'n at 3–15). For reasons discussed below, the Court agrees with Cowan that she has not alleged a sufficiently concrete injury to confer Article III standing. This Court therefore lacks jurisdiction to decide her claims and will remand this case to state court.

This Court has recently addressed the question of whether alleged MCEMA violations via the type of promotional emails at issue here constitute a concrete injury under Article III, and it has consistently answered that they do not. See LaTouche, 2026 WL 2221402, at *1 (noting that this Court has "repeatedly determined that the plaintiff lacks Article III standing" when the plaintiff "in briefing or in a complaint disclaims any injury beyond mere receipt of emails that allegedly violate MCEMA"); accord Cowan, 2026 WL 2945164, at *4–5; Crooks v. Coty DTC Holdings, LLC, No. RDB-26-78, 2026 WL 1265422, at *5 (D.Md. May 8, 2026); Carter v. Vineyard Vines, LLC, No. ELH-25-3178, 2026 WL 1429258, at *26 (D.Md. May 21, 2026); Smith, 2026 WL 1745684, at *2; Mulanena, 2026 WL 1214932, at *6–7. Most recently, less than two months ago, this Court considered a class action with the same named Plaintiff as the instant action, alleging the same single count of violation of MCEMA via emails of the same nature as the instant action, and remanded the action for a lack of Article III standing. See Cowan, 2026 WL 2945164, at *5–6. Nevertheless, the Court will address each of Supergoop's arguments as to why remand is not appropriate here.

Supergoop first argues that Cowan does, in fact, allege "several distinct concrete injuries." (Opp'n at 6). Supergoop points to Cowan's statements that "Defendant's

subject lines were false or misleading because they conveyed that recipients needed to act immediately," and that the emails "flooded consumers' inboxes with repeated false notifications." (Id. (emphasis added)). These statements, however, are not allegations of injury to Cowan; rather, they are general statements about what the emails at issue could do or tend to do to consumers at large. As such, none of these allegations support the required Article III injury to Cowan. See Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 207 (4th Cir. 2017) (noting that "[f]or an injury to be particularized" under the injury-in-fact element of Article III standing, "it must affect the plaintiff in a personal and individual way" (quoting Spokeo, 578 U.S. at 339)).

Supergoop also argues that Cowan alleges concrete injury because "MCEMA was created to protect against concrete harm." (Opp'n at 7). But regardless of the legislative intent behind MCEMA, the question is not what Maryland's legislature intended, but rather what Cowan alleges about her own injury. See Spokeo, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation"); cf. Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 999 n.2 (11th Cir. 2020) ("[Courts] cannot treat an injury as 'concrete' for Article III purposes based only on [a legislature's] say-so."). Supergoop's discussion of the Maryland legislature's intent, therefore, is irrelevant to the question of whether Cowan alleges a concrete injury-in-fact.

Supergoop next points to Beyond Systems, Inc. v. Kraft Foods, Inc., 777 F.3d 712 (4th Cir. 2015), as "directly on point and dispositive," (Opp'n at 9). Although the United States Court of Appeals for the Fourth Circuit did find in Beyond Systems, Inc. that the legal interest MCEMA creates could support standing on its own, 777 F.3d at

716, "Beyond Systems was decided prior to both Spokeo and TransUnion, which 'rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right,'" Asabre v. Retail Servs. & Sys., Inc., No. PWG-22-148, 2022 WL 4326536, at *2 (D.Md. Sep. 19, 2022) (quoting TransUnion, 594 U.S. at 426); accord Smith, 2026 WL 1745684, at *2 ("Spokeo and TransUnion have since rejected [Beyond Systems's] reasoning [that a violation of MCEMA creates a concrete injury]."). Indeed, binding Fourth Circuit precedent now holds that pure statutory violations, as alleged here, (see generally Compl.), do not confer Article III standing,[4] O'Leary v. TrustedID, Inc., 60 F.4th 240, 243 (4th Cir. 2023) ("[I]ntangible harm of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm . . . associated with the violation."). Despite this, Supergoop mischaracterizes Garey as showing that Beyond Systems still applies and supports Cowan having Article III standing. (See Opp'n at 10).[5] In fact, the Garey court explicitly acknowledged that "plaintiffs cannot establish a

---

[4] Supergoop's other cited cases do not overcome this precedent. See Omega World Travel, Inc. v. Mummagraphics, Inc., 469 F.3d 348, 357–58 (4th Cir. 2006) (reaching merits without discussing standing at all); Gordon v. Virtumondo, Inc., 575 F.3d 1040, 1064 (9th Cir. 2009) (finding pre-emption "[r]egardless of the merits" in a holding that does not bind this Court).

[5] Again, while Supergoop cites non-binding cases from other districts to support the proposition that Cowan has standing because the violation at issue is the precise harm that the statute was meant to guard against, (see Opp'n at 11 (first citing Devivo v. Sheex Inc., No. 3:25-cv-5807-DGE, 2026 WL 775625, at *2 (W.D.Wash. Mar. 19, 2026); then citing Harbers v. Eddie Bauer, LLC, 415 F.Supp.3d 999, 1008 (W.D.Wash. 2019); and then citing Liss v. Skechers USA Inc., No 3:23-cv-5961-DGE, 2026 WL 1392327 (W.D.Wash. May 19, 2026))), and to support the proposition that courts interpreting analogous statutes have agreed that plaintiffs need not allege harm beyond receiving the emails to establish standing, (id. (first citing Whittaker v. Tactical USA LLC, 2024 WL 1855645, at *6 (E.D.Cal. Apr. 29, 2024); and then citing Chin v.

cognizable injury simply by pleading a statutory violation," and found standing based not on violation of North Carolina law, as Supergoop implies, but because "[p]laintiff's alleged harms [were] closely related to the invasion of privacy, which has long provided a basis for recovery at common law." 35 F.4th at 921–23.

Supergoop then contends that Cowan's harm bears a close enough relationship to common law torts, including nuisance, invasion of privacy, and deprivation of truthful information, to establish a concrete injury. (Opp'n at 11–15). While a plaintiff may have standing if their injury is closely related to harms that courts have traditionally addressed, TransUnion, 594 U.S. at 432, Article III standing "requires the plaintiff's intangible injury—not the defendant's conduct—to closely resemble a historical common law analogue," Cowan, 2026 WL 2945164, at *6 (citing Smith, 2026 WL 1745684, at *2). Here, Cowan alleges no injuries that bear a close enough relationship with the traditional harms that Supergoop argues give her Article III standing.

First, Supergoop claims that "bombard[ing] . . . consumers . . . with commercial emails" constitutes a nuisance because it "waste[s] consumers' time and choke[s] consumers' email inboxes." (Opp'n at 12 (quoting Harbers v. Eddie Bauer, LLC, 415 F.Supp.3d 999, 1001–02 (W.D.Wash. 2019))). But this Court explained recently that an

---

Evergreen Freedom Found., 764 F.Supp.3d. 924, 934 (C.D.Cal. 2025))), numerous decisions from this district have explicitly rejected both of those arguments when considering virtually identical facts to those at issue here, see Cowan v. Williams-Sonoma Stores, Inc., No. RDB-26-3073, 2026 WL 2945164, at *4–5 (D.Md. Oct. 1, 2026); Carter v. Vineyard Vines, LLC, No. ELH-25-3178, 2026 WL 1429258, at *17–18 (D.Md. May 21, 2026); Smith v. Lane Bryant Brands Opco LLC, No. SAG-25-3766, 2026 WL 1745684, at *2 (D.Md. June 17, 2026); Mulanena v. Ulta Salon, Cosms., and Fragrance, Inc., No. JRR-25-3753, 2026 WL 1214932, at *6–7 (D.Md. May 4, 2026); Asabre v. Retail Servs. & Sys., No. PWG-22-148, 2022 WL 4326536, at *2 (D.Md. Sep. 19, 2022); LaTouche v. True Religion Apparel, Inc., No. RDB-26-914, 2026 WL 2221402, at *2 (D.Md. Aug. 3, 2026).

injury bears a "close relationship" to Maryland nuisance only if a plaintiff alleges a "substantial and unreasonable interference with the use and enjoyment of property." Carter, 2026 WL 1429258, at *25. Even if the Court considers Cowan's inbox property, Cowan did not allege "that the emails['] . . . volume substantially interfered with her email account or property," or even that she "lost inbox capacity." (Reply Supp. Mot. Remand ["Reply"] at 1, 4, ECF No. 11). Cowan has therefore alleged no interference with her inbox or her property, meaning that Cowan's Complaint bears no relationship to nuisance.

Second, Supergoop contends that the allegations in Cowan's Complaint bear a close relationship to invasion of privacy and wasted time. (Opp'n at 12–14). But whether or not courts have "recognized that the time, attention, and distraction costs associated with spam are concrete injuries in their own right," such recognition is irrelevant because Supergoop's claim that "[Cowan] alleges precisely these harms" is untrue. (Id. at 13). The paragraphs in the Complaint that Supergoop cites as support allege potential harms to consumers, not actual harms to Cowan. (Id. (citing Compl. ¶¶ 34–36)). Supergoop's cited cases, therefore, are inapposite, because they all involve wasted time, which Cowan does not allege here. (See generally Compl.; see Opp'n at 13 (first citing Reed v. IC Sys., Inc., No. 3:15-cv-279, 2017 WL 89047, at *4 (W.D.Pa. Jan. 10, 2017) (finding concrete injury when repeated unanswered calls caused wasted time and annoyance (emphasis added)); then citing Reichman v. Poshmark, Inc., 267 F.Supp.3d 1278, 1284 (S.D.Cal. 2017) (concerning wasted time due to unwanted text messages (emphasis added)); and then citing In re Equifax Inc. Customer Data Sec. Breach Litig., 999 F.3d 1247, 1262 (11th Cir. 2021) (finding time spent responding to

data breach is concrete injury (emphasis added)))). Whether some consumers might waste time on Supergoop's emails is irrelevant here because Article III requires the plaintiff's injury, not the defendant's conduct, to closely resemble a traditional analogue. Smith, 2026 WL 1745684, at *2. Cowan claimed no such injury, so there is no relationship to the traditional harms of invasion of privacy and wasted time.

Finally, Supergoop argues that Cowan's alleged harm is closely related to deprivation of truthful information. (Opp'n at 14–15). Supergoop relies on Harbers, a case that does not bind this Court and upon which this Court has cast doubt following TransUnion, see Carter, 2026 WL 1429258, at *14–*16,[6] to claim that MCEMA's prohibition of "emails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial emails," (Opp'n at 14–15 (citing Harbers, 415 F.Supp.3d at 1011)). Even if this Court accepts that argument, plaintiffs do not automatically satisfy the injury-in-fact requirement whenever they sue to vindicate a statutory right. Asabre, 2022 WL 4326536, at *2 (quoting TransUnion, 594 U.S. at 426). Further, unlike in Cowan's suit against Williams-Sonoma, Inc., which this Court also dismissed for lack of concrete injury, Cowan, 2026 WL 2945164, at *2–4 (finding no injury-in-fact when Cowan alleged only statutory harm, even when "she 'would have liked' to receive truthful information from [Defendant] regarding [its] promotions'"),

---

[6] In Carter, this Court noted that, while Harbers "concluded that violations of [Washington's MCEMA equivalent] gave rise to injuries resembling" nuisance and fraud and therefore constituted concrete injuries, "[o]f import . . . Harbers . . . [was] decided before the Supreme Court's decision in TransUnion." Carter v. Vineyard Vines, LLC, No. ELH-25-3178, 2026 WL 1429258, *14 (D.Md. May 21, 2026). This Court then emphasized that "[o]f significance, in TransUnion, the Supreme Court made clear that a statutory violation is not coextensive with a concrete harm." Id. at *16 (citing TransUnion LLC v. Ramirez, 594 U.S. 413, 424–26 (2021)).

here, Cowan does not even allege that she wanted truthful emails from Supergoop; she alleges only that she received the relevant emails, (see Compl. ¶¶ 43–47 (stating only that Cowan "received and retained" the relevant emails and expressing no desire for truthful information from Supergoop)). Thus, Cowan did not allege that she was deprived of desired truthful information, and, to the extent that she has a statutory right to such information, a violation of that right does not create an injury-in-fact without actual harm.

In sum, the only harm Cowan alleges is a statutory violation; she alleges no concrete injury. A statutory violation alone is insufficient to constitute an injury-in-fact, Asabre, 2022 WL 4326536, at *2, and Cowan does "not allege that [she] regarded the emails as unwanted, relied on them, spent significant time, or experienced another personal consequence" due to Supergoop's emails, (Reply at 1). "Try as [Supergoop] might, standing may not be created through the 'embellishing [of] otherwise deficient allegations.'" See Carter, 2026 WL 1429258, at *26 (quoting S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 179 (4th Cir. 2013)). Consequently, despite Supergoop's assertions that Cowan alleged "several distinct concrete injuries," (Opp'n at 6), Cowan's allegations that some consumers may experience such injuries, (see Compl. ¶ 36), do not create a concrete injury to Cowan herself. See Cowan, 2026 WL 2945164, at *5 (citing Carter, 2026 WL 1429258, at *28, *30) (noting that allegations of emails creating false sense of urgency and stimulating consumers to make purchases do not constitute injury-in-fact to a particular plaintiff); Epps v. JPMorgan Chase Bank N.A., No. WMN-10-1504, 2012 WL 5250538, at *5 (D.Md. Oct. 22, 2012) (emphasizing that plaintiff "does not allege that she, herself,

suffered any . . . injury or loss" where allegations refer only to members of class); In re Microsoft Corp. Antitrust Litig., 127 F.Supp.2d 702, 711 (D.Md. 2001) (noting that, "under well-established principles," a plaintiff alleging "generalized societal harm . . . is insufficient to confer standing upon them"), supplemented by, No. MDL-1332, 2001 WL 137254 (D.Md. Feb. 15, 2001), and aff'd sub nom., Kloth v. Microsoft Corp., 444 F.3d 312 (4th Cir. 2006). Because Cowan has not alleged concrete injury, she lacks standing, TransUnion, 594 U.S. at 423; as such, this Court lacks jurisdiction over this case, Pub. Int. Legal Found., Inc., 164 F.4th at 365 (citing Steel Co., 523 U.S. at 94). Accordingly, the Court will remand this action to state court.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Cowan's Motion to Remand (ECF No. 5). A separate Order follows.

Entered this 24th day of November, 2026.

/s/
George L. Russell, III
Chief United States District Judge